# EXHIBIT D
# (Without Exhibits)

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| CHATTANOOGA PROFESSIONAL SOCCER MANAGEMENT, LLC, | ) ) |
| Plaintiff, | ) ) ) |
| v. | ) Civil Action No. 1:19-cv-00339 ) ) |
| ARKANSAS STATE UNIVERSITY, | ) ) |
| Defendant. | ) ) ) |

### DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT

Defendant Arkansas State University ("ASU") enters a special appearance to submit this Motion to Dismiss because ASU is immune from suit in this Court for these claims under the Eleventh Amendment of the U.S. Constitution. This Court also lacks jurisdiction under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, because no justiciable controversy exists. Plaintiff Chattanooga Professional Soccer Management, LLC's ("CPSM") Complaint for Declaratory Judgment ("Complaint," Dkt. No. 1) should be dismissed for a lack of subject matter jurisdiction as a result. ASU files this Memorandum of Law in Support of its Motion to Dismiss.

### BACKGROUND

#### A.     The Parties

ASU is a publically funded state university located in Jonesboro, Arkansas. It is an agency of the state of Arkansas, founded over 100 years ago. ASU is the owner of a large family of RED WOLVES trademark registrations ("the ASU Marks").

Since 2009, ASU has spent millions of dollars branding, publicizing, marketing, and protecting the ASU Marks, having earned an excess of $1.2 million in licensing fees since that time. The ASU Marks have been registered and used on consumer goods including clothing, educational and conference materials, and educational and entertainment services. ASU also uses the ASU Marks in all types of advertising both nationally and internationally on printed materials, promotional items, sports branding, outdoor advertising, billboards, radio, social media, and television. The ASU Marks are used in conjunction with its sports teams, including its soccer teams and youth sports camps, along with club and intramural teams.

CPSM is a professional soccer team founded in 2018, as the Chattanooga Red Wolves SC, located in Chattanooga Tennessee. According to its website,[1] since 2018, CPSM has launched the Chattanooga Lady Red Wolves, launched two pre-professional soccer teams, launched three youth academies, and begun construction on its professional soccer stadium.

In late 2018, CPSM filed two trademark registrations ("the CPSM Marks"). (Compl. ¶¶ 6-7.) Those include Trademark Application No. 88/117505 for the name and mark CHATTANOOGA RED WOLVES SC and Trademark Application No. 88/196890 for the name and mark CHATTANOOGA RED WOLVES SC & Design. (Compl. ¶¶ 6-7.) The file history from Trademark Application No. 88/117505 is attached as Exhibit 1[2] and the file history from Trademark Application No. 88/196890 is attached as Exhibit 2.[3]

---

[1] https://www.chattanoogaredwolves-sc.com/club

[2] This Court is permitted to consider facts that are of public record on a motion to dismiss without converting it to a motion for summary judgment. *Commercial Money Center, Inc. v. Illinois Union Insurance Co*., 508 F.3d 327, 336 (6th Cir.2007).

[3] Exhibits 1 and 2 also contain portions of the bibliographic information and the Trademark Trial and Appeal Board Inquiry System from Trademark Application No. 88/117505 and Trademark Application No. 88/196890, respectively, retrieved from the United States Patent and Trademark website.

On January 3, 2019, the CPSM Marks were initially rejected by the United States Patent and Trademark Office ("USPTO") because the USPTO believed that there would be a likelihood of confusion with several trademarks, including the ASU Marks. (Ex. 1 at 13-51; Ex. 2 at 14-53.) The CPSM Marks were amended on May 30, 2019 in attempt to overcome the likelihood of confusion identified by the USPTO. (Ex. 1 at 52-123; Ex. 2 at 54-127.)

In response to those amendments, the USPTO withdrew the refusal to register the CPSM Marks on July 1, 2019. CPSM did not inform the USPTO that ASU has soccer teams that play and market goods in the states of Tennessee, Alabama, and Georgia—the same trade channels as ASU—when making those amendments so the USPTO did not have the benefit of this information when it allowed the mark to move forward.

The CPSM marks were published for opposition on August 20, 2019. (Ex. 1 at 1; Ex. 2 at 2.) On September 11, 2019, ASU filed 90-day extensions of time to oppose their registration, which were granted by the USPTO. (Ex. 1 at 150; Ex. 2 at 140.) On December 18, 2019—about three weeks after CPSM filed its Complaint requesting declaratory judgment—ASU filed notices of opposition to the CPSM Marks. (Ex. 1 at 150; Ex. 2 at 140.)

### B.    The Correspondence Between the Parties

#### 1.    The ASU December 14, 2018 Letter

On December 14, 2018, counsel for ASU sent a letter to CPSM ("the ASU December 14, 2018 Letter"). (Compl., Ex. C.) That letter, which concerned only the CPSM's word mark (Trademark Application No. 88/117505), explained to CPSM what the USPTO later confirmed: the word mark, as filed, was likely to be confused with the ASU Marks.

The ASU December 14, 2018 Letter requested that CPSM cease use of that mark, requested withdrawal of the application as it existed at that time, and requested a response by December 28,

2018. Although this letter explained that ASU was prepared to litigate the matter, the letter made it clear this was only the case if no response was received by the December 28 date.

### 2.  The CPSM December 21, 2018 Letter

In response to the ASU December 14, 2018 Letter, counsel for CPSM sent a letter on December 21, 2018 ("the CPSM December 21, 2018 Letter"). (Compl., Ex. D.) CPSM asserted that it disagreed with ASU, and provided its belief that "teams of different sports, or levels of sport, may share the same name without a likelihood of confusion." It then provided a list of teams having some form of "wolf" or "wolves" in the name, including examples of "Red Wolves" used by High School teams.

CPSM requested that ASU send a draft co-existence agreement for its review. The CPSM December 21, 2018 Letter made no mention of litigation, did not assert that it believed that any litigation was actual or imminent, and set no deadline to respond.

### 3.  The CPSM September 27, 2019 Letter

Although CPSM did not include with its Complaint its correspondence to ASU sent on September 27, 2019 ("the CPSM September 27, 2019 Letter"), ASU provides it here as Exhibit 3 so that this Court may have a full factual record on which to complete its assessment of this matter.[4]

---

[4] "In reviewing this motion to dismiss, the panel may consider the complaint along with any document not formally incorporated by reference or attached to the complaint as part of the pleadings if the 'document is referred to in the complaint and is central to the plaintiff's claim.'" *Gardner v. Quicken Loans, Inc.*, 567 F. App'x 362, 364–65 (6th Cir. 2014); *Venture Assoc. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993) (pertinent documents attached to a motion to dismiss may be considered on a 12(b)(6) motion, "[o]therwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document upon which it relied."); *see also Magellan Int'l Corp. v. Salzgitter Handel GmbH*, 76 F. Supp. 2d 919, 922-23 (N.D. Ill. 1999) ( "[w]hen parties engage in a chain of correspondence relating to a transaction within a short period of time, and then one party detaches and presents only certain links of the chain in its effort to state a claim for relief, the party against whom such an incomplete picture is painted is entitled to fill in the skeletal outline thus presented by the complaining party by adding the missing links.").

CPSM waited more than nine months after the CPSM December 21, 2018 Letter to send this follow-up correspondence.

Counsel for CPSM sent the CPSM September 27, 2019 Letter so that the parties could "work together to avoid a very costly Opposition proceeding" after ASU had filed for an extension of time in which to seek an opposition before the USPTO. (Ex. 3 at 1.) CPSM then cited statistics concerning USPTO oppositions to assert that it was very unlikely that ASU would be successful there, and then again requested a co-existence agreement.

Again, CPSM made no mention of any actual or imminent litigation, set no deadline for response, and made it clear that it did not believe that any litigation was forthcoming. Instead, CPSM only discussed an opposition proceeding that had not yet been filed and sought settlement terms.

### 4.    The ASU November 18, 2019 Letter

On November 18, 2019, counsel for ASU sent a letter ("the ASU November 18, 2019 Letter") responding to CPSM. (Compl., Ex. E.)

That letter made no mention of litigation, but rather, responded to CPSM's concerns about a potential opposition and attempted to clarify ASU's position concerning the likelihood of confusion between the ASU Marks and the CPSM Marks. Counsel for ASU provided an extensive discussion about why ASU believed that a likelihood of confusion would exist, and why it felt a reasonable royalty was a more equitable basis for settlement, rather than the co-existence agreement proposed by CPSM.

The ASU November 18, 2019 Letter did not threaten CPSM with litigation, it did not impose a date in which to respond, and it did not request that CPSM cease using the marks. Instead, it expressed ASU's intention to pursue the opposition before the USPTO in view of the likelihood of confusion that would be caused by registration of the CPSM marks if no settlement was reached.

5

The parties focused on the prospect of an opposition throughout all correspondences and communicated with the objective of settlement in mind.

## ARGUMENT

This Court should dismiss this action under Federal Rules of Civil Procedure 12(b)(1) and (6). This suit is barred because ASU is sovereignly immune under the Eleventh Amendment of the U.S. Constitution. This Court also lacks jurisdiction under the Declaratory Judgment Act because there is no real and substantial dispute of sufficient immediacy that warrants such an opinion. For these reasons, this action should be dismissed.

### A.    Legal Standard

A party may move for dismissal based on lack of subject-matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure at any time. *See* Fed. R. Civ. P. 12(h)(3). Rule 12(b)(1) motions to dismiss may constitute facial or factual attacks. *Ohio Nat. Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). A facial attack "merely questions the sufficiency of the pleading." *Ibid*. With a factual attack, the Court must "weigh the conflicting evidence to arrive at the factual predicate that subject-matter jurisdiction exists or does not exist." *Ibid*. "When the defendant challenges subject matter jurisdiction through a motion to dismiss, the plaintiff bears the burden of establishing jurisdiction." *Hedgepeth v. Tenn.*, 215 F.3d 608, 611 (6th Cir.2000). The plaintiff's factual allegations are not presumed to be true when the Court confronts this type of challenge. *RMI Titanium Co. v. Westinghouse Electric Corp.*, 78 F.3d 1125, 1134 (6th Cir.1996).

The court will not exercise subject matter jurisdiction over a declaratory judgment action unless the dispute is "definite and concrete, touching the legal relations of parties having adverse legal interests," is "real and substantial," and "admi[ts] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a

6

hypothetical state of facts." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (internal quotations omitted). "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Ibid*.

### B.   This Court Lacks Jurisdiction Because ASU is Immune Under the Eleventh Amendment

ASU is challenging this Court's jurisdiction through this motion to dismiss, so CPSM bears the burden of showing that jurisdiction is proper—which it cannot do. The defense of sovereign immunity raises a challenge to a court's subject-matter jurisdiction. *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1046 (6th Cir. 2015) ("The weight of our sovereign-immunity precedent leads us to conclude that we have already held that Eleventh Amendment issues are jurisdictional in nature."); *see Sims v. Univ. of Cincinnati*, 46 F.Supp.2d 736, 737 (S.D.Ohio 1999), *aff'd by* 219 F.3d 559 (6th Cir.2000). And this raises a facial challenge to the court's jurisdiction where the plaintiff then bears the burden of establishing that jurisdiction exists. *Hedgepeth v. Tenn.*, 215 F.3d at 611 ("When the defendant challenges subject matter jurisdiction through a motion to dismiss, the plaintiff bears the burden of establishing jurisdiction.").

ASU is immune from this suit because of the Eleventh Amendment's protection afforded to it. The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. "[S]overeign immunity generally precludes any private party—whether or not a citizen of the state to be sued—from naming a nonconsenting state as a defendant in a federal court action." *Jacobs v. Memphis Convention &*

7

*Visitors Bureau*, 710 F. Supp. 2d 663, 668 (W.D. Tenn. 2010) (citing *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267–68 (1997)). The sovereign immunity guaranteed by the Eleventh Amendment deprives federal courts of subject-matter jurisdiction unless the State waives its immunity or Congress abrogates that sovereign immunity. *Russell v. Lundergan–Grimes*, 784 F.3d 1037, 1046 (6th Cir.2015). Accordingly, this Court lacks jurisdiction because ASU is sovereignly immune and none of the exceptions to that immunity apply.

        **1.**      **The Eleventh Amendment's immunity applies to ASU and the claims asserted against it**

ASU is a state agency entitled to Eleventh Amendment immunity because ASU is considered an "arm" of the "state." *See Hutsell v. Sayre*, 5 F.3d 996, 999 (6th Cir.1993) (holding that similarly situated University of Kentucky was an arm of the state and afforded Eleventh Amendment protection). Specifically, the Eighth Circuit (the jurisdiction in which ASU is actually located) has held that the Eleventh Amendment bars suit against claims for money damages and injunctive relief against ASU. *Monroe v. Arkansas State Univ.*, 495 F.3d 591, 594 (8th Cir. 2007). Even Plaintiff acknowledges that ASU is a "state agency." (Compl. ¶ 2.) CPSM also pleads no allegations to support jurisdiction in this Court contrary to ASU's sovereignty in this matter.

Eleventh Amendment immunity applies to claims under the Lanham Act and associated declaratory judgment actions like the one at issue here. *Kentucky Mist Moonshine, Inc. v. Univ. of Kentucky*, 192 F. Supp. 3d 772, 780 (E.D. Ky. 2016) ("Eleventh Amendment immunity applies to claims under the Lanham Act"); *see College Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 691 (1999). Thus, imposing CPSM's requested restrictions on the scope of enforceability of the ASU Marks is outside this Court's jurisdiction.

### 2. None of the exceptions to sovereign immunity apply to this action

There are three exceptions to sovereign immunity, none of which apply here. First, Congress may abrogate sovereign immunity but only "when it both unequivocally intends to do so and 'act[s] pursuant to a valid grant of constitutional authority,'" such as under the Fourteenth Amendment's Enforcement Clause. *Bd. of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. 356, 363-64 (2001); *Fitzpatrick v. Bitzer*, 427 U.S. 445, 456 (1976). Second, a State, in the exercise of its sovereignty, may voluntarily waive sovereign immunity. *Ernst v. Rising*, 427 F.3d 351, 358 (6th Cir. 2005); *Lapides v. Bd. of Regents of Univ. Sys. of Georgia*, 535 U.S. 613, 618 (2002); *College Sav. Bank*, 527 U.S. at 670. Third, the doctrine of *Ex parte Young*[5] allows federal courts to enjoin individual state officers in their official capacities to conform their conduct to federal law. *See Michigan Corr. Org. v. Michigan Dep't of Corr.*, 774 F.3d 895, 904 (6th Cir. 2014); *Kentucky Mist Moonshine*, 192 F.Supp.3d at 784 ("Because *Ex Parte Young* applies only to state officials, this doctrine does not apply as an exception to the Eleventh Amendment immunity" in a declaratory judgment action concerning trademark).

#### a) Congress has not abrogated sovereign immunity for Plaintiff's claims

"Determining whether Congress has constitutionally abrogated a State's Eleventh Amendment immunity requires resolution of two predicate questions: (1) whether Congress unequivocally expressed its intent to abrogate; and (2), if so, whether it acted pursuant to a valid grant of constitutional authority." *Tennessee v. Lane*, 541 U.S. 509, 509–10 (2004). Both of these questions are easily dispatched here. As noted above, Eleventh Amendment immunity applies to claims under the Lanham Act and associated declaratory judgment actions. *Kentucky Mist Moonshine,* 192 F.Supp.3d at 780 ("Congress has not abrogated immunity for intellectual property

---

[5] 209 U.S. 123 (1908).

claims, including trademark claims, brought under the Lanham Act and subsequent amendments."); *College Sav. Bank*, 527 U.S. at 691. Thus, there has been no abrogation of sovereign immunity for this action because Congress has not specifically expressed an intent to do so, nor has Plaintiff alleged or cited any such basis.

Even more broadly, Congress's attempts to abrogate sovereign immunity for other intellectual property claims have similarly been found invalid. *See Florida Prepaid Postsecondary Education Expense Board v. College Sav. Bank*, 527 U.S. 627, 634-48 (1999) (holding the Patent Remedy Act's purported abrogation of state sovereign immunity lacked the congruence and proportionality required of prophylactic legislation under § 5 of the Fourteenth Amendment); *see also Jacobs v. Memphis Convention & Visitors Bureau*, 710 F. Supp. 2d at 667-82 (dismissing action because the Copyright Remedy Clarification Act of 1990's attempted abrogation could not be sustained as appropriate legislation). Even if CPSM were to attempt to amend its Complaint to provide a rationale for jurisdiction, it cannot successfully do so because there has been no abrogation that grants this Court jurisdiction.

Additionally, framing trademark claims as ones for judgment under the Declaratory Judgment Act cannot sidestep this hurdle. *Thomas v. Pierce*, 662 F. Supp. 519, 524 (D. Kan. 1987) ("[N]either the Mandamus Act, 28 U.S.C. § 1361, nor the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, waive the government's sovereign immunity in mandamus or declaratory judgment actions."); *see Nuclear Transp. & Storage, Inc. v. U.S. Through Dep't of Energy*, 703 F. Supp. 660, 665 (E.D. Tenn. 1988), *aff'd sub nom. Nuclear Transp. & Storage, Inc. v. United States*, 890 F.2d 1348 (6th Cir. 1989) (dismissing declaratory judgment claims as barred by sovereign immunity); *see also Muirhead v. Mecham*, 427 F.3d 14, 18 n.1 (1st Cir. 2005); *see also Kentucky Mist Moonshine*, 192 F. Supp. 3d at 780-81. CPSM is simply without a basis, under the Lanham

Act, the Declaratory Judgment Act, or otherwise, to assert the relief that it seeks from this Court because there has been no applicable Congressional abrogation that overcomes ASU's Eleventh Amendment sovereign immunity.

### b) *ASU has not waived its Eleventh Amendment immunity*

It is a long-standing rule that waiver of the Eleventh Amendment requires a clear declaration to surrender to the court's jurisdiction. *Coll. Sav. Bank*, 527 U.S. at 675 (citing *Northern Life Ins. Co. v. Read*, 322 U.S. 47, 54 (1944) and citing and quoting *Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89, 99 (1984) (State's consent to suit must be "unequivocally expressed")). Further, "'courts indulge every reasonable presumption against waiver' of fundamental constitutional rights." *Coll. Sav. Bank*, 527 U.S. at 675 (quoting *Aetna Ins. Co. v. Kennedy ex rel. Bogash*, 301 U.S. 389, 393 (1937)). ASU has not taken any action in this Court or any other court that has waived this immunity because waiver requires a clear declaration to surrender to the court's jurisdiction. The Supreme Court has confirmed that no waiver was present in instances where a lower court granted a motion to dismiss, so this Motion does not constitute waiver. *See Coll. Sav. Bank*, 527 U.S. at 675-92. And a State's mere participation in interstate commerce does not voluntarily waive its immunity, either. *See id*. at 675-87. ASU has only appeared in this matter for the limited purpose of challenging this Court's jurisdiction through this Motion to Dismiss and has taken no affirmative action whatsoever that could possibly constitute voluntary waiver.

### c) *The Ex parte Young doctrine is inapplicable*

The *Ex parte Young* doctrine does not apply because it applies only to state officials. *Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993) (The *Ex parte Young* exception is narrow as it "applies only to prospective relief, does not permit judgments against state officers declaring that they violated federal law in the past…and has no application

in suits against the States and their agencies, which are barred regardless of the relief sought" (internal citations omitted)); *Russell v. Lundergan–Grimes*, 784 F.3d 1037, 1046 (6th Cir.2015). CPSM has not, and cannot, assert any claim against any official acting in his or her capacity in this action, and this exception does not apply.

### C.     There is No Real and Substantial Case or Controversy of Sufficient Immediacy to Warrant Jurisdiction Under the Declaratory Judgment Act

This preemptive Complaint should be dismissed for a lack of jurisdiction under the Declaratory Judgment Act. The plaintiff must establish a "real and substantial," dispute that "admi[ts] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *MedImmune*, 549 U.S. at 127.

CPSM's Complaint fails this test for three reasons. First, filing an extension for opposition to trademark registrations at the USPTO (or actually filing an opposition after the Complaint's filing date) is insufficient to establish an adequate controversy. Second, the tenor and substance of the parties' correspondence did not create a real and substantial dispute of sufficient immediacy for jurisdiction in federal court. Third, consideration of the totality of the circumstances of all of these factors shows that these facts fall short for establishing declaratory judgment jurisdiction. The Complaint should therefore be dismissed for a lack of jurisdiction.

### 1.     Filing an opposition to a trademark at the USPTO does not create an actual controversy for declaratory judgment jurisdiction

As an initial matter, it is noteworthy that CPSM bases its jurisdictional assertions on the allegation that ASU had filed a notice of opposition to the trademark registration of the CPSM Marks prior to filing the Complaint (e.g., ¶ 15), but ASU had only sought extensions of time to file those oppositions at that time. As a demonstration of its improper attempt to preemptively file suit before a dispute could even conceivably be ripe, CPSM filed this Complaint weeks before

12

ASU's deadline to file a notice of opposition, and without further communication with ASU following the ASU November 18, 2019 Letter.[6] As a result, this allegation is meritless and cannot form the basis for jurisdiction because it is based on facts that had not yet occurred. *Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 570 (2004) ("It has long been the case that 'the jurisdiction of the court depends upon the state of things at the time of the action brought.'").

Nevertheless, even if CPSM were to amend its Complaint to reflect that a notice of opposition has now been filed, many courts have held that the act of opposing the registration of a trademark at the USPTO is insufficient to establish declaratory judgment jurisdiction. *See Hogs & Heroes Found. Inc. v. Heroes, Inc.*, 202 F. Supp. 3d 490, 495 (D. Md. 2016) ("At the outset, it bears noting that 'the existence of a dispute before the TTAB is insufficient to establish sufficient adversity for purposes of a declaratory judgment action." (quoting *Vina Casa Tamaya S.A. v. Oakville Hills Cellar, Inc.*, 784 F. Supp. 2d 391, 395 (S.D.N.Y.2011))); *see also Acme Feed Mills, Inc. v. Quaker Oats Co.*, 313 F. Supp. 1156, 1158 (M.D.N.C. 1970) ("A notice of opposition to an application to register trademarks does not constitute a charge of trademark infringement since it relates only to the right to register the trademark. The notice of opposition is nothing more than a statutory administrative procedure challenging the granting of trademark registration."). As a result, ASU's filing of a notice of opposition to CPSM's trademark registration cannot provide the basis for declaratory judgment jurisdiction.

---

[6] Although CPSM represented to this Court that "ASU's threats of legal action <u>and filing Oppositions against Plaintiff's two pending federal trademark applications</u> present a real and actual controversy suitable for determinations by this Court," (Compl., ¶ 15 (emphasis added)) CPSM does not explain that ASU had not filed the oppositions as of the time of the Complaint.

2.     **The tenor and substance of the parties' communications is insufficient to show a dispute was created that established declaratory judgment jurisdiction**

Between late 2018 and the filing of the Complaint, the parties exchanged only four communications. Two of those occurred in late 2018 prior to any examination or rejection of the pending registrations at the USPTO. The third correspondence was sent over nine months after the second, gutting any assertion that this action arose as one of "sufficient immediacy" to warrant jurisdiction in this Court. Then, only after ASU sent the fourth correspondence that sought reasonable settlement terms and focused on the scope of the registrations, as opposed to any threats concerning litigation, CPSM preemptively filed the Complaint. Review of these correspondences shows that, at all relevant times, the parties were primarily considering registration of the CPSM Marks, the appropriate scope of the registration, and reasonable settlement terms. The determination of whether to exercise declaratory judgment jurisdiction is based on the totality of circumstances, and a full consideration of all the facts of these communication reveal that this Court lacks jurisdiction. *Vina Casa Tamaya*, 784 F. Supp. 2d at 395-97 (dismissing the complaint for a lack of jurisdiction based on the totality of circumstances, which supported that the dispute primarily concerned registration of the marks).

a)     *No dispute of sufficient immediacy was created by the ASU December 14, 2018 Letter*

The Complaint alleges that the ASU December 14, 2018 Letter constituted a threat that justifies declaratory judgment jurisdiction in this matter. (Compl. ¶ 8.) However, when quoting the ASU December 14, 2018 Letter, CPSM intentionally truncates its quotation of that letter, which stated that ASU was only considering litigation if CPSM did not respond by a particular date. (Compl. ¶ 8, Ex. C at 2 ("The University is prepared to escalate to the full extent allowable by law, including litigation, if we do not receive a cooperative response by this date.").) CPSM replied

14

prior to that date, thus eradicating any threat, to the extent one even existed. Also, the ASU December 14, 2018 Letter concerned only one of the CPSM Marks (the word mark), and was sent prior to any amendments or examination at the USPTO, long before any time period to oppose the mark, and arose as a result of ASU's ongoing tracking of potentially infringing marks.

### b) *CPSM's letters show that it did not believe a lawsuit was sufficiently immediate*

CPSM promptly replied to the ASU December 14, 2018 Letter, thus negating the likelihood that ASU would file any lawsuit. And, instead of expressing concern or indicating any belief that a lawsuit was looming, the CPSM December 21, 2018 Letter supplied examples of trademarks that incorporated "wolf," "wolves," or "red wolves" and expressed its belief that there would be no likelihood of confusion between the ASU Marks and the CPSM Marks. With that letter, CPSM initiated settlement negotiations by requesting that the parties enter into a co-existence agreement.

CPSM then waited more than nine months to send any further communication to ASU, thus unequivocally demonstrating that the 2018 letters were insufficient to establish a controversy of sufficient immediacy to now warrant jurisdiction. In the CPSM September 27, 2019 Letter, CPSM merely referenced the potential for an opposition proceeding at the USPTO and further sought settlement negotiations. CPSM provided no indication that it thought litigation may be imminent or at all likely, removing the possibility that these letters could form the basis for declaratory judgment jurisdiction.

### c) *No dispute was created by the ASU November 18, 2019 Letter*

The ASU November 18, 2019 Letter did not request that CPSM cease usage of the CPSM Marks and did not threaten litigation, which are factors that weigh in favor of dismissal here. *See Kentucky Mist Moonshine*, 192 F. Supp. 3d 772 (declining declaratory judgment jurisdiction where defendant did not threaten litigation or request plaintiff cease use of the marks); *see also Crowned*

*Heads, LLC v. Nat'l Grange of Order of Patrons of Husbandry*, No. 3:12-CV-1062, 2013 WL 1347874, at *1 (M.D. Tenn. Apr. 3, 2013) (finding a controversy present for declaratory judgment jurisdiction when a cease and desist letter demanded plaintiff cease using mark).

The ASU November 18, 2019 Letter did not set a deadline to respond, the tone was cooperative, and sought a settlement on reasonable terms, which are all factors supporting dismissal of this action. *World Religious Relief v. Gospel Music Channel*, 563 F. Supp. 2d 714, 716 (E.D. Mich. 2008) ("Defendant's tone in its letters, while protective of what it perceives to be its legal interests, was certainly not threatening."). Moreover, reservation of rights does not establish declaratory judgment jurisdiction. *See Hogs & Heroes*, 202 F. Supp. 3d 490 (holding that defendant's unwillingness to agree that it would never file suit, among other factors, was insufficient to establish controversy). Here, just as in *World Religious Relief* and *Hogs & Heroes*, the cooperative tone, lack of threats, no demand to cease use of the CPSM marks, seeking a reasonable settlement, setting no deadline to respond, and merely reserving ASU's rights, shows the ASU November 18, 2019 Letter does not establish the required controversy for jurisdiction.

### 3. The totality of the circumstances support dismissal of this action for a lack of jurisdiction

When considering the totality of the circumstances, which includes all of the aspects of the correspondences and the filing of an extension of time in which to file a notice of opposition at the USPTO, this case exemplifies the kind of back-and-forth between two parties attempting to amicably resolve the intersecting rights they possess, rather than an actual dispute. *Vina Casa Tamaya*, 784 F. Supp. 2d at 396 ("Moreover, parties should be encouraged to engage in interest-based negotiation without making a federal case out of it."). Those circumstances make it clear that CPSM filed its Complaint in an effort to receive an advisory opinion from this Court, which is not the intent of the Declaratory Judgment Act, and is barred by *MedImmune*, 549 U.S. at 127.

Although this jurisdiction has not established direct precedent on an analogous set of facts, other courts have decided not to exercise jurisdiction because similar circumstances did not establish a sufficient controversy under the Declaratory Judgment Act. In *Hogs & Heroes*, the court determined a remarkably similar set of facts was "too vague and unsubstantiated to support jurisdiction" where that jurisdiction was based on:

> (1) Defendant's opposition to Plaintiff's registration application with the TTAB, (2) two prior federal trademark infringement suits that the Defendant pursued in the last fifty years, (3) Defendant's "history of opposing registrations" of other marks, (3) [sic] settlement discussions where Defendant proposed granting Plaintiff license or geographical restricting Plaintiff's use of the service mark, and (4) [sic] Defendant's unwillingness to agree that it would never file suit against Plaintiff in the future.

202 F. Supp.3d at 495. In *Vina Casa Tamaya*, the defendant demanded the plaintiff abandon its pending trademark registration, formally filed a notice of opposition with the USPTO, and based its settlement negotiations around the registration of the mark, but this was insufficient to establish jurisdiction under the Declaratory Judgment Act. 784 F.Supp.2d at 395-97.

Also, in *World Religious Relief*, jurisdiction was denied where the parties had only exchanged three letters and the court concluded the "prospect of litigation was not mentioned by either party" even though defendant demanded that plaintiff change the font of defendant's mark because "the *prominent* use of the of those words in a lower case font that closely resembles the font used by our client for those very same words in trademark infringement." 563 F.Supp.2d. at 716-17 (emphasis in original). In consideration of all of this, the court determined that "Defendant's tone in its letters, while protective of what it perceives to be its legal interests, was certainly not threatening." *Id*. at 716.

In one non-precedential instance where a Tennessee District Court did exercise jurisdiction, the defendant sent a cease and desist letter asserting that it was the owner of a number of valid, incontestable registrations for its marks and that plaintiff's "unauthorized use…would not

17

only cause a likelihood of confusion with the [defendant's] marks, but would also dilute those by blurring or tarnishment," coupled with the claim that the defendant "would not only oppose any application for registration, but that it would also object to any commercial *use*" of the mark. *Crowned Heads*, No. 3:12-CV-1062, 2013 WL 1347874, at \*5 (emphasis in original). There, the jurisdiction was granted on the basis of the clear indication of threats of an infringement suit that included claims of blurring or tarnishment that could only arise in federal court, in combination with the commencement of an opposition at the USPTO.

Another distinguishable, but informative, case is this Court's pre-*MedImmune* decision where it exercised jurisdiction based on the "reasonable apprehension of liability" test rather than the one later articulated by the Supreme Court. *McKee Foods Kingman v. Kellogg Co.*, 474 F. Supp. 2d 934 (E.D. Tenn. 2006). There, a demand letter asserted federal causes of action including trademark and trade dress infringement, as well as false advertising. *Id*. at 936. Moreover, that letter demanded that plaintiff cease and desist from using the defendant's federally registered trademark and trade dress, account for associated profits that plaintiff made, and alter the plaintiff's packaging, advertising and promotional materials, including its websites, along with other "express or implied" advertising claims. *Id*. at 936-40.

Here, however, any mentions of litigation were only present in the very first correspondence between the parties (the ASU December 14, 2018 Letter), that correspondence concerned the state of only one of the CPSM Marks as it existed prior to any of CPSM's amendments to the pending registrations at the USPTO, and the likelihood of litigation was diffused by CPSM's timely response. In fact, if CPSM had believed the ASU December 14, 2018 Letter contained a colorable threat of litigation that was sufficiently immediate, it would not have waited over nine months to follow up to the CPSM December 21, 2018 Letter and would not have

waited nearly a year to pursue this action. Further, ASU never demanded that CPSM account for profits, which the Court relied upon heavily in reaching its decision in *McKee Foods*, 474 F.Supp.2d at 939 ("Thus, the closing sentence of Defendant's letter can easily—and reasonably—be interpreted as 'cease infringing and account for profits or face suit.'"). This scenario is therefore easily distinguishable from *Crowned Heads* and *McKee Foods*.

Instead, these circumstances are much more akin to those in *Hogs & Heroes*, *Vina Casa Tamaya*, and *World Religious Relief* because full consideration of the few letters exchanged between the parties where registration of the CPSM Marks was at the heart of the discussion shows a cooperative tone, and lack of threats. Also, the most recent letter (the ASU November 18, 2019 Letter) set no deadline to respond, did not demand that CPSM cease use of the CPSM Marks, did not demand CPSM abandon these marks, and merely reserved ASU's rights. *See also Kentucky Mist Moonshine* 192 F. Supp. 3d 772 (E.D. Ky. 2016) (declining declaratory judgment jurisdiction where defendant did not threaten litigation or request plaintiff cease use of the marks). In fact, the crux of the November 18, 2019 Letter was based on the issues concerning the registration of trademarks. Furthermore, as supported by these cases and discussed above in Argument Section C. 1., filing an opposition at the USPTO in conjunction with these communications does not create a real and substantial controversy of sufficient immediacy for declaratory judgment jurisdiction. ASU therefore moves for dismissal for a lack of jurisdiction because the totality of circumstances support that a sufficient controversy does not exist.

### D.    CPSM Lacks Standing to Assert Count II

CPSM seeks declaratory judgment that its marks "are not reproductions, copies, counterfeits, or colorable imitations of any of Defendant's marks under the Lanham Act." (Compl. ¶ 25.) CPSM lacks standing to assert Count II, however, because none of the communications that allegedly establish declaratory judgment jurisdiction discussed this issue nor asserted that CPSM's

logos or marks are "reproductions, copies, counterfeits, or colorable imitations." *Kentucky Mist Moonshine*, 192 F. Supp. 3d at 787-88 (dismissing overly broad declaratory judgment claims for a lack of standing). Count II is overly broad, without any merit, and cannot serve the basis for declaratory judgment jurisdiction.

### E.      This Court should exercise its discretion to decide not to declare the rights alleged by CPSM

Even if this Court could find that it has jurisdiction over this matter, it should exercise its discretion to dismiss the suit. In *Grand Trunk W. R. Co. v. Consol. Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984), the Sixth Circuit adopted a set of factors to consider when exercising discretion to deny jurisdiction over a declaratory judgment action.[7] The factors to be balanced to determine whether to exercise declaratory judgment jurisdiction are as follows:

> (1) whether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata"; (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective.

*Savoie v. Martin*, 673 F.3d 488, 496 (6th Cir. 2012); *see also McKee Foods*, 474 F. Supp. 2d at 940-42 (determining whether the court should exercise discretion to deny jurisdiction after finding an actual dispute existed). "[D]istrict courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when

---

[7] ASU notes that the *Grand Trunk* factors were established prior to the Supreme Court's decision in *MedImmune*, 549 U.S. 118, where the Supreme Court did not rely on, nor adopt a test using those factors. The Sixth Circuit has nevertheless used those factors to determine whether to exercise jurisdiction in declaratory judgment disputes after the *MedImmune* decision (*see, e.g.*, *Massachusetts Bay Ins. Co. v. Christian Funeral Directors, Inc.*, 759 F. App'x 431, 435 (6th Cir. 2018)). Although ASU believes that those factors weigh in favor of dismissal, ASU does not waive any argument concerning the propriety and applicability of that test and reserves all rights in this respect.

the suit otherwise satisfies subject matter jurisdictional prerequisites." *AmSouth Bank v. Dale*, 386 F.3d 763, 784 (6th Cir. 2004). All of these factors favor ASU and militate in favor of dismissal.

> **1.     This declaratory action will not settle the controversy because the USPTO will ultimately determine whether to register the mark.**

Apart from any grant of jurisdiction, the USPTO will ultimately make its own determination of the registrability of the CPSM Marks, meaning that this action would not actually settle the controversy because CPSM is not asking this Court to cancel the ASU Marks. *See Hogs & Heroes*, 202 F.Supp.3d at 498 (exercising discretion to deny jurisdiction after the filing of trademark opposition); *see also Vina Casa Tamaya*, 784 F.Supp.2d at 397 (exercising discretion to deny jurisdiction after filing of trademark opposition). In *McKee Foods*, the court determined that this factor weighed in favor of exercising jurisdiction because the dispute was "almost entirely comprised of federal trademark and trade dress" infringement claims. *See McKee Foods*, 474 F.Supp.2d at 941. This is unlike the situation here because, to the extent any dispute exists, it is primarily focused on the registration of the recently approved CPSM Marks and the pending opposition at the USPTO. Thus, because CPSM's requested declaratory relief does not include cancellation of any of the ASU Marks, that agency is the sole forum in which any cognizable dispute could be resolved. The USPTO resolution will, therefore, rest in the hands of the USPTO. As a result, this factor weighs in favor of ASU.

> **2.     This declaratory action would not serve a useful purpose in clarifying the legal relations at issue.**

As noted under the prior factor, the trademark opposition has been filed at the USPTO and the registrability of the marks at issue will be determined there. Therefore, the USPTO's decision would largely moot any issues that are conceivably in dispute. As a result, this factor weighs in favor of ASU.

### 3.   CPSM filed this suit in an effort to procedurally fence-off ASU from filing its opposition, and this Court should deny jurisdiction.

CPSM filed this anticipatory suit in an apparent attempt to foreclose ASU from challenging CPSM's marks at the USPTO. (*See* Compl. Prayer for Relief (c).) CPSM's communications also make this clear. Its communications only concerned the registration of its marks, and did not ever contemplate litigation. In fact, the CPSM September 27, 2019 Letter mentioned only avoiding the opposition proceeding and provided statistics on the success rates of oppositions at the USPTO. Although CPSM seeks judgment on a broader set of issues than the registration alone, this declaratory judgment action is a clear attempt to undercut the possibility that ASU oppose the CPSM Marks at the USPTO.

Furthermore, this factor weighs in favor of dismissal when the action was filed "in an attempt to acquire its choice of forum by filing first." *Scepter, Inc. v. Metal Bulletin Ltd.*, 165 F. Supp. 3d 680, 688 (M.D. Tenn. 2016); *AmSouth Bank*, 386 F.3d at 788 ("Courts take a dim view of declaratory plaintiffs who file their suits mere days or weeks before the coercive suits filed by a 'natural plaintiff' and who seem to have done so for the purpose of acquiring a favorable forum."). CPSM strategically filed this action mere weeks before ASU's expiration of the extension of time to file a notice of opposition at the USPTO in an effort to race to adjudicate its alleged rights and without providing any prior indication to ASU that it intended to file suit. CPSM filed this action in a jurisdiction prohibited by the Eleventh Amendment, and in CPSM's favorable home forum. And CPSM did all of this a mere seven days after receiving the ASU November 18, 2019 Letter that remains unanswered. *See id*. at 689 (this factor weighs in favor of dismissal when plaintiff "took advantage of the apparent uncertainty at this point of the correspondence to file an anticipatory declaratory action in its home forum"); *see also J.M. Smucker Co. v. Promotion in Motion, Inc.*, No. 5:19CV1116, 2019 WL 5802663, at *14 (N.D. Ohio Nov. 7, 2019) (finding that

22

"procedural fencing" was supported by a motivation for improper forum shopping).  For all these

reasons, this factor supports ASU's Motion.

> **4.     Declaratory action would increase friction between this Court and other courts because this Court lacks jurisdiction under the Eleventh Amendment.**

Courts in the Sixth Circuit have ignored this factor when no state court action is involved,

so this factor is largely inapplicable in this action. *See Plough, Inc. v. Allergan*, Inc., 741 F. Supp.

144, 147 (W.D. Tenn. 1990) ("The fourth factor set forth by the Sixth Circuit in *Grand Trunk* is

clearly inapplicable in the present case in that no state court is involved."). However, this action

implicates the Eleventh Amendment that prohibits this Court from exercising jurisdiction in this

matter, as discussed above. To the extent that any court has jurisdiction to hear this matter,

jurisdiction is improper here and exercising jurisdiction would do no more than cause the type of

jurisdictional friction the Sixth Circuit is concerned with. *Grand Trunk*, 746 F.2d at 326 ("Grand

Trunk's request for declaratory relief is an attempt to have the federal courts do what the state court

has already refused to do. As such, Grand Trunk's request for declaratory relief is not only an

impermissible attempt to race with Conrail to obtain a favorable final judgment, but also will create

unnecessary friction between federal and state courts."). Indeed, that friction is particularly

egregious if it would run afoul of ASU's Constitutional protection under the Eleventh Amendment,

as it would here.

This concern is broadened further by CPSM requesting declaratory judgment that its use

of its marks does not "constitute unfair competition or trademark infringement <u>under the statutes

or common law of any state</u> in the United States." (Compl. ¶ 22 (emphasis added).). ASU is not

subject to the laws or jurisdiction of all states or federal courts in the United States. Moreover,

CPSM has not explained or alleged how or why this Court should give an advisory opinion about

"any and all laws" of the United States nor has CPSM alleged how those apply or how this Court

possesses jurisdiction to render a decisions predicated on any and all laws of any jurisdiction in the United States. In fact, this demand makes it clear that the Complaint is one seeking an advisory opinion, rather than one arising out of an actual controversy. This factor thus weighs in favor of ASU.

     **5.**     **Allowing the USPTO to render a decision on the opposition is a more effective remedy.**

As evidenced by the correspondence between the parties, the heart of the matter concerns the registrations of CPSM's marks. Therefore, allowing the USPTO to render a decision on the likelihood of confusion between the two marks, which is the test it uses to determine the registrability of the CPSM Marks, is a more appropriate forum better-suited for the present matter. This factor, along with the others, weighs in favor of ASU.

<u>**CONCLUSION**</u>

For all the foregoing reasons, ASU respectfully requests that the Court enter an order dismissing Plaintiff's complaint in its entirety with prejudice, pursuant to Fed. R. Civ. P. 12(b)(1) and (6).

Dated: January 22, 2020

Respectfully submitted,

/s/ Paige W. Mills

Paige W. Mills (#016218)
**Bass, Berry & Sims, PLC**
150 Third Avenue South, Suite 2800
Nashville, TN 37201
Tel: 615-742-7770
Fax: 615-742-0429
Email: pmills@bassberry.com

Matthew D. Zapadka
 (admitted *pro hac vice*)
**Bass, Berry & Sims, PLC**
1201 Pennsylvania Avenue NW, Suite 300

24

Washington, DC 20004
Tel: 202-827-7974
Fax: 202-380-0586
Email: matt.zapadka@bassberry.com

***Counsel for Arkansas State University***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and exact copy of the foregoing has been served upon the

following via the Court's CM/ECF e-mail notification system, on this 22nd day of January, 2020.

Hollie Floberg
Matthew D. Brownfield
GRANT KONVALINKA & HARRISON PC
633 Chestnut Street
Suite 900
One Republic Center
Chattanooga, TN 37450
E-mail: hfloberg@gkhpc.com
E-mail: mbrownfield@gkhpc.com

*/s/ Paige W. Mills*
Paige W. Mills

26