IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| CHATTANOOGA PROFESSIONAL SOCCER MANAGEMENT, LLC, a Utah limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>ARKANSAS STATE UNIVERSITY,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**<br><br>Case No. 2:23-cv-00850-JNP-JCB<br><br>District Judge Jill N. Parrish<br><br>Magistrate Judge Jared C. Bennett |

Before the court is a motion filed by Defendant Arkansas State University ("ASU" or "the University") to dismiss for lack of personal jurisdiction and subject matter jurisdiction under Rule 12(b) of the Federal Rules of Civil Procedure. ECF No. 14 ("Def.'s Mot."). Plaintiff Chattanooga Professional Soccer Management, LLC ("CPSM") filed this action in the District of Utah, appealing a judgment from the Trademark Trial and Appeal Board and requesting declaratory relief. For reasons set forth herein, ASU's motion to dismiss is GRANTED. The court dismisses this action WITHOUT PREJUDICE.

**BACKGROUND**

CPSM is the owner of the Red Wolves Soccer Organization in Salt Lake City. It owns a professional soccer team, the Chattanooga Red Wolves SC, and two other semi-professional soccer teams. Although CPSM's principal place of business is Park City, Utah, its professional soccer team is based out of Chattanooga, Tennessee.

ASU is a publicly funded state university in Jonesboro, Arkansas. It is a part of the Arkansas State University System, based in Little Rock, Arkansas. ASU owns a United States Trademark Registration for the mark "RED WOLVES" (the "ASU Mark"). ASU sells goods branded with the ASU Mark online and through third-party retailers. The University also recruits nationwide for its sport programs. And its athletic teams branded with the ASU Mark have competed in Utah. However, ASU does not own or lease any property in Utah, nor does it maintain any offices in the state. Only one employee of 2,865 University employees resides in Utah. That employee teaches remote classes to students located in Arkansas.

In 2018, CPSM filed two trademark applications to register the marks "CHATTANOOGA RED WOLVES SC" and "CHATTANOOGA RED WOLVES SC & Design" (the "CPSM Marks"). A month later, ASU sent CPSM a letter requesting it cease and desist all use of the CPSM Marks and abandon its trademark applications. The letter was sent to the address of CPSM's professional soccer team, the Chattanooga Red Wolves SC, in Chattanooga, Tennessee and directed at the team's use of the CPSM Marks. In January 2019, the United States Patent and Trademark Office denied CPSM's trademark applications, concluding the CPSM Marks were likely to be confused with other trademarks, including the ASU Mark. CPSM amended its applications, and the United States Patent and Trademark Office published the CPSM Marks for opposition. Shortly thereafter, ASU filed an opposition with the Trademark Trial and Appeal Board ("TTAB") to prevent registration of the CPSM Marks.

In November 2019, CPSM brought a declaratory judgment action in the Eastern District of Tennessee. *See Chattanooga Pro. Soccer Mgmt., LLC v. Ark. State Univ.*, No. 1-19-cv-00339 (E.D.Tenn. Aug. 11, 2020). ASU filed a motion to dismiss, which the court granted based on lack of subject matter jurisdiction. The court held that ASU "is immune from suit under the Eleventh

2

Amendment and no exceptions apply." Order Granting Motion to Dismiss, *Chattanooga Pro. Soccer Mgmt., LLC v. Ark. State Univ.*, No. 1-19-cv-00339 (E.D.Tenn. Aug. 11, 2020) ECF No. 32. at 13; *see also* ECF 14-1 ("Mem. Op. & Order") at 13.

On September 18, 2023, the Trademark Trial and Appeal Board denied the registration of the CPSM Marks. CPSM has not appealed that decision to the Federal Circuit. Instead, CPSM filed this action seeking to appeal the Trademark Trial and Appeal Board judgment. It also added an additional claim for declaratory relief. ASU then filed the pending motion to dismiss for lack of subject matter jurisdiction and personal jurisdiction. ASU argues that it is immune from suit under the Eleventh Amendment and that CPSM is precluded from relitigating that issue based on the Eastern District of Tennessee's final judgment.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(1) allows a court to dismiss an action for lack of subject matter jurisdiction. In fact, a district court *must* dismiss an action "[i]f it determines at any time that it lacks subject-matter jurisdiction." FED. R. CIV. P. 12(h)(3). The Tenth Circuit has held that "[t]he Eleventh Amendment is a jurisdictional bar that precludes unconsented suits in federal court against a state and arms of the state." *Peterson v. Martinez*, 707 F.2d 1197, 1205 (10th Cir. 2013); *see also Normandy Apts., Ltd. v. United States HUD*, 554 F.3d 1290, 1295 (10th Cir. 2009) ("The defense of sovereign immunity is jurisdictional in nature, depriving courts of subject-matter jurisdiction where applicable."). Because the federal courts are courts of limited jurisdiction, "[t]he party invoking the jurisdiction of the court has the duty to establish that federal jurisdiction does exist . . . ." *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974). Thus, CPSM bears the burden of proof.

3

Likewise, Federal Rule of Civil Procedure 12(b)(2) allows a court to dismiss an action for lack of personal jurisdiction. "[P]laintiff bears the burden of establishing personal jurisdiction over the defendant," but "need only make a prima facie showing" that the defendant is subject to personal jurisdiction in Utah. *Behagen v. Amateur Basketball Asso.*, 744 F.2d 731, 733 (10th Cir. 1984). In determining whether the plaintiff has met its burden, the court will resolve all factual disputes in the plaintiff's favor. *Id.*

## ANALYSIS

Generally, a court will address subject matter jurisdiction before proceeding to personal jurisdiction, unless the "question of personal jurisdiction is more easily resolved." *Logan v. Logan*, 2012 U.S. Dist. LEXIS 56680, at *6 (D. Utah 2012). The court finds this to be the case here. Accordingly, the court begins with the issue of personal jurisdiction.

A plaintiff makes a prima facie showing of personal jurisdiction "by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant." *Melea, Ltd. v. Jawer Sa*, 511 F.3d 1060, 1065 (10th Cir. 2007) (internal quotation marks omitted). The plaintiff cannot rely on conclusory statements, but "must point to well-pleaded factual allegations . . ." *Gould v. Wise*, 2023 U.S. App. LEXIS 20140, at *5 (10th Cir. 2023). And the court resolves "any factual disputes in the plaintiff's favor." *Id.*

To establish personal jurisdiction over the defendant, "the court must determine (1) whether the applicable statute potentially confers jurisdiction by authorizing service of process on the defendant and (2) whether the exercise of jurisdiction comports with due process." *Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir. 2006). In conducting the first inquiry, courts look to the applicable state's long-arm statute. *See Melea*, 511 F.3d at 1065. Here, Utah's statute extends jurisdiction "to the fullest extent permitted by the due process clause of the Fourteenth Amendment

4

to the United States Constitution." UTAH CODE ANN. § 78B-3-201. Thus, only one inquiry is necessary—whether the exercise of jurisdiction comports with due process.

To satisfy due process requirements, a court must examine whether the defendant has "certain minimum contacts with [the State] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Bristol-Myers Squibb Co. v. Superior Court*, 582 U.S. 255, 271 (2017). Minimum contacts are established by the defendant's relationship with the forum state, which may result in either general or specific jurisdiction. *See id.*

### I.   GENERAL JURISDICTION

A court may exercise general jurisdiction when a defendant's "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Id.* The Complaint alleges that ASU "has solicited business," "has transacted and done business," and "has participated in multiple sporting events" in the state of Utah. ECF No. 1 ("Pl.'s Compl.") ¶ 4. But CPSM fails to establish that ASU has such a "continuous physical or business presence" in Utah to render it essentially at home. *C5 Med. Werks v. CeramTec GmbH*, 937 F.3d 1319, 1323 (10th Cir. 2019). ASU is not headquartered in Utah, nor does it have its principal place of business in Utah. In fact, ASU does not even maintain an office in Utah. Participating in a few sporting events and advertising ASU branded goods over the internet that may be bought by Utah residents is not enough to render ASU "essentially at home in [Utah]." *Bristol-Myers*, 582 U.S. at 271.

### II.  SPECIFIC JURISDICTION

But this court may still exercise jurisdiction over ASU if CPSM makes a prima facie showing of specific jurisdiction. Specific jurisdiction exists where the defendant has "purposefully avail[ed] itself of the privilege of conducting activities within the forum State" and the plaintiff's claim "arise[s] out of or relates to the defendant's forum conduct." *Id.* at 272 (internal quotation

5

marks omitted). Even if the plaintiff satisfies the purposeful availment requirement, the court must also find that the exercise of specific jurisdiction is reasonable. *See id.*

Here, CPSM asserts that ASU has purposefully availed itself of the privilege of conducting business in Utah by participating in sporting events in Utah, selling goods with the ASU Mark online, recruiting nationally for its sports programs and education services, and participating in the TTAB proceedings that affected CPSM's Utah subsidiaries. The Tenth Circuit recognizes "three frameworks for determining whether an out-of-state defendant's activities satisfy the purposeful direction requirement: (1) continuing relationships with forum state residents ('continuing relationships'); (2) deliberate exploitation of the forum state market ('market exploitation'); and (3) harmful effects in the forum state ('harmful effects')." *Old Republic Ins. V. Cont'l Motors, Inc.*, 877 F.3d 895, 905 (10th Cir. 2017). The court considers each framework in turn.

### A.   Continuing Relationships

First, Plaintiff argues that ASU falls within the "continuing relationships" framework because "it markets its educational services and athletic programs under the ASU Marks on a nationwide scale in an effort to recruit residents of states across the U.S. into its school and programs." ECF No. 19 ("Pl.'s Opp.") at 9. CPSM argues that to the extent these efforts have recruited Utah residents to participate in its programs, ASU has established continuing relationships with the forum state.

But CPSM does not allege how many Utah residents are recruited as a result of ASU's nationwide marketing. Nor does it allege that ASU has entered into any contractual relationships which may have "envisioned continuing and wide-reaching contacts" in the forum state. *Burger King Copr. V. Rudzewicz*, 471 U.S. 462, 479 (1985). In fact, CPSM's complaint fails to show that ASU maintains *any* "obligations with citizens of [Utah]." *Id.* at 473. As far as the complaint is

concerned, these marketing efforts could affect only a few Utah residents, if any. And blanket nationwide marketing of its programs seems to demonstrate the opposite of purposeful availment—that ASU is *not* directing its advertising efforts at Utah residents. In providing only speculative statements about the effect of ASU marketing, CPSM fails to establish a continuing relationship between ASU and Utah residents.

B. **Market Exploitation**

Second, CPSM argues that ASU purposefully availed itself by deliberately exploiting the Utah market. "Continuous and deliberate exploitation of the forum state market can satisfy the minimum contacts standard for specific jurisdiction over an out-of-state defendant in a suit arising from its related sales there." *Old Republic*, 877 F.3d at 914. A plaintiff may demonstrate a defendant's market exploitation through evidence of "high sales volume and large customer base and revenues" and "extensive nationwide advertising or ads targeting the forum state." *Id.* at 915.

But CPSM alleges neither of these things. CPSM does not allege any facts regarding ASU sales revenue in Utah, nor does it allege ASU specifically targets Utah. CPSM alleges that ASU markets and promotes its ASU Mark nationwide. Pl.'s Opp. at 10. But it does not claim that ASU's nationwide marketing campaign is so "extensive" that it exploits the Utah market. And in terms of ASU's online advertising that may potentially reach Utah residents, the Tenth Circuit has emphasized that "merely posting information on the internet does not, in itself, subject the poster to personal jurisdiction wherever that information may be accessed." *Shrader v. Biddinger*, 633 F.3d 1235, 1244 (10th Cir. 2011). Rather, the plaintiff must allege that online advertisements "are directed specifically at a forum state audience or otherwise make the forum state the focal point of the message." *Id.* And CPSM does not allege any facts to suggest ASU directed its promotional materials specifically at the Utah market. Such "random, isolated, or fortuitous" sales and

7

advertisements cannot be characterized as a deliberate and continuous exploitation of the Utah market by any stretch of the imagination. *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984). Accordingly, CPSM has not pleaded any facts that, if true, would support jurisdiction under the market exploitation framework.

### C.     Harmful Effects

Finally, CPSM claims that the effects of ASU's actions will be felt in Utah, thereby establishing the court's personal jurisdiction over ASU. In the absence of continuing relationships or market exploitation, "[p]urposeful direction may [] be established . . . when an out-of-state defendant's intentional conduct targets and has substantial harmful effects in the forum state." *Old Republic*, 877 F.3d at 907. Under this framework, the Tenth Circuit requires the plaintiff to show "(a) an intentional action that was (b) expressly aimed at the forum state with (c) knowledge that the brunt of the injury would be felt in the forum state." *XMission, L.C. V. Fluent LLC*, 955 F.3d 833, 841 (10th Cir. 2020). In applying the harmful effects test, the Supreme Court held that "mere injury to a forum resident is not a sufficient connection to the forum . . . The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Walden v. Fiore*, 571 U.S. 277, 290 (2014).

CPSM points to ASU's efforts to prevent it from using the CPSM Marks to demonstrate that ASU took intentional actions leading to harmful effects in Utah. But nothing in CPSM's complaint or declarations it provided suggests that ASU purposefully targeted Utah. And none of the actions alleged, participation in the TTAB proceeding or sending the cease-and-desist letter, connect ASU to Utah in a meaningful way. *See id.* CPSM alleges only that ASU knew that CPSM "operates a soccer academy and manages a semi-professional soccer team in Utah in connection with CPSM Marks." Pl.'s Opp. at 12.

8

But even if ASU had knowledge of CPSM's Utah affiliates, none of ASU's actions as alleged by CPSM show that ASU deliberately focused its actions at the Utah forum. The cease-and-desist letter ASU sent to CPSM is directed at the CPSM's Tennessee-based professional soccer team, the Chattanooga Red Wolves SC, not CPSM's Utah-based teams or soccer academy. In fact, the letter never mentions Utah and was sent to the Chattanooga team's address in Tennessee. And ASU's engagement in the TTAB proceedings located in Washington D.C. were also not directed at the forum state. There is no evidence to suggest that ASU's opposition to the CPSM Marks was expressly aimed at CPSM's Utah subsidiaries. Rather, the University's cease and desist letter reveals that it was more concerned about the professional soccer team's use of the CPSM Marks in Tennessee as opposed to the use of those Marks in Utah. Therefore, CPSM has failed to plead facts sufficient to establish that ASU acted intentionally or expressly directed its efforts at the forum state. *See XMission*, 955 F.3d at 841.

CPSM also fails to meet the burden of showing substantial harmful effects in Utah, let alone that ASU had any knowledge that harmful effects would result from its conduct. CPSM argues that it "will be significantly damaged if it can no longer market its good and services under the CPSM Marks in Utah and will have to incur significant expenses to rebrand its academy and team." Pl.'s Opp. at 12. But the issue is not whether CPSM is harmed or "where [CPSM] experienced a particular injury or effect." *Walden*, 571 U.S. at 290. Rather, the question is whether "the brunt of the injury would be felt in the forum state." *XMission*, 955 F.3d at 841. Because this dispute primarily concerns a Tennessee-based soccer team and an Arkansas public university, it is unlikely the brunt of any injury would be felt in Utah. The only allegations CPSM makes to show effects on the Utah forum is that CPSM rebranding will affect Utah consumers because they will have to "buy rebranded goods or wear goods that no longer reflect the team's brand." Pl.'s Opp.

9

at 12-13. CPSM then concludes that this will significantly impact Utah residents and the Utah economy. But CPSM provides no facts about the role its teams or soccer academy play in the Utah market or how many Utah residents would be affected by this rebranding. CPSM's speculative statements about the effect of ASU's efforts to prevent the use of the CPSM Marks on its Utah-based entities are not sufficient to show "substantial harmful effects." *Old Republic*, 877 F.3d at 907.

CPSM has failed to allege well-pleaded facts sufficient to establish minimum contacts under any of the three frameworks employed by the Tenth Circuit. Rather, CPSM relies on conclusory allegations regarding ASU's activities in the forum state. Thus, the court finds that CPSM has failed to make a prima facie showing that ASU "purposefully avail[ed] itself of the privilege of conducting activities within the forum State." *Bristol-Myers*, 582 U.S. at 272.

### D.  Reasonableness

Even if ASU had purposefully availed itself by its participation in the trademark dispute with CPSM, personal jurisdiction from that participation would not be reasonable. Indeed, the Federal Circuit has emphasized that "[p]rinciples of fair play and substantial justice afford a [defendant] sufficient latitude to inform others of its [] rights without subjecting itself to jurisdiction in a foreign forum." *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1360-61 (Fed. Cir. 1998); *see also Impact Prods. v. Impact Prods., LLC*, 341 F.Supp.2d 1186, 1191 (D. Colo. 2004) ("As a general rule . . . a defendant's reasonable, good faith actions to protect its alleged rights, including transmittal of cease and desist letters and litigation efforts against a forum resident, do not constitute 'express aiming' at the forum sufficient to establish the constitutionally required minimum contacts with the forum."); *see also Yahoo! Inc. v. La Ligue Contre Le Racisme et L'Antisemitisme*, 379 F.3d 1120, 1125 (9th Cir. 2004). Therefore, personal

jurisdiction based upon ASU's efforts to inform CPSM of its trademark rights and its participation in the TTAB proceedings would not be reasonable.

To demonstrate reasonableness, the Supreme Court requires an analysis of the five factors articulated in *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980): (1) "the burden on the defendant," (2) "the forum State's interest in adjudicating the dispute," (3) "the plaintiff's interest in obtaining convenient and effective relief," (4) "the interstate judicial system's interest in obtaining the most efficient resolution of controversies," and (5) "the shared interest of the several States in furthering fundamental substantive social policies." *Bristol-Myers*, 582 U.S. at 272.

Requiring ASU to defend itself in Utah would be undoubtedly burdensome as the University has no offices or presence in Utah. And although Utah may have an interest in resolving a dispute regarding a trademark used by a Utah company, that interest is limited. The only effect of this litigation in Utah is the potential for CPSM's Utah-based semi-professional teams and soccer academy to be subject to a rebrand. But nothing in the complaint suggests that this rebranding would have a substantial effect in Utah. Thus, Utah does not have a strong interest in adjudicating this dispute. And this is likely because the controversy primarily involves a public university in Arkansas and a professional soccer team based in Tennessee, not CPSM's Utah subsidiaries. As a result, the "majority of parties, witnesses, and evidence exists outside of [Utah]." *Dental Dynamics, LLC v. Jolly Dental Grp., LLC*, 946 F.3d 1223, 1233 (10th Cir. 2020). Thus, litigating this case in a Utah forum would not be in the interest of obtaining an efficient resolution.

Accordingly, personal jurisdiction, even if ASU had purposefully availed itself of the privilege of conducting activities in Utah, would be unreasonable. The court finds CPSM has failed to make a prima facie showing of specific jurisdiction.

**CONCLUSION AND ORDER**

For the reasons above, the court GRANTS Defendant's motion to dismiss for lack of personal jurisdiction. This action is DISMISSED WITHOUT PREJUDICE.

DATED February 3, 2025

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge